UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALYCE R. ANDERSON, ) | |
| ) | No. 1:21-CV-01417 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| AMERICAN POSTAL WORKERS UNION, ) | |
| AFL-CIO, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Alyce Anderson is an employee of the United States Postal Service and a member of the Postal Union. R. 1, Compl. at 1.[1] She alleges that the Union refused to pay her part of a $2.75 million award settlement that she was owed. *Id.* Presumably to recoup the money owed, Anderson sues the national American Postal Workers Union, AFL-CIO, as well as the Northwest Illinois Area Local Union, and several of the unions' officers. *Id.* Anderson argues that the Defendants' failure to pay her amounted to hostile, discriminatory, and retaliatory treatment in violation of 5 U.S.C. § 7116, and that it breached the American Postal Work Union's Constitution and the Union's duty of fair representation, in violation of Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. *Id.*[2] All of the Defendants have moved to

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]Except as otherwise explained in this Opinion (on the unfair labor practices claims), this Court has subject matter jurisdiction over Anderson's federal claims under 28 U.S.C. § 1331.

dismiss, arguing that this Court lacks subject matter jurisdiction over Anderson's claims and, in the alternative, Anderson's complaint fails to state a claim under Civil Rule 12(b)(6). *See* R. 24, Loc. Union Defs.' Mot.; R. 27, Nat'l Union Defs.' Mot. For the reasons explained in this Opinion, the Defendants' motions are granted, with certain claims being dismissed with prejudice and others without prejudice to an amended complaint.

## I. Background

Alyce Anderson worked as a labor custodian for the United States Postal Service. Compl. at 1. Like other United States Postal Service employees, Anderson's position was covered by a collective bargaining agreement between the Postal Service and APWU National, the Postal Service's national worker's union (for convenience's sake, the National Union). *Id.* at 16.

Anderson's complaint is based on the Unions' alleged failure to pay her portions of grievance settlements that she allegedly was owed. Compl. at 1–2; R. 25, Loc. Union Defs.' Br. at 2. She alleges that the Northwest Illinois Area Local (to distinguish from the National Union, this Opinion will refer to the local as the Local Union) refused to pay her share of a $2.75 million grievance settlement paid to other labor custodians who worked at her postal facility. Compl. at 1–2. Adding color to the allegation, Anderson specifically claims that the person who ranked 17th in seniority was paid twice and that she, ranked 16th, was denied any part of the settlement. *Id.* She also explains that that labor custodians at her postal facility were owed what she calls "Line H" arbitration each year for work hours not performed. *Id.* Though she

admits that she received the payouts from 2018 and 2019, she alleges that she has not received the payouts for 2014 through 2017, but other union employees have received payouts for these years. *Id.* Anderson alleges that other union employees received corresponding payouts for those years. *Id.*

Not only does Anderson claim that she was denied certain payouts, she also claims that "my union" (without explicitly specifying the National, the Local, or both) did not properly address other grievances that she filed. Compl. at 1. First, she alleges that even after the unions agreed to compensate a certain employee for a grievance, the unions never paid the employee. *Id.* She also alleges that on several occasions, her union refused to file grievances or, if they did file a grievance, the payout that she received was at the wrong salary or hourly wage. *Id.* at 2–3. Finally, Anderson alleges that her union did not follow up on or process several of the grievances that she filed. *Id.* at 3.

Having little luck with receiving payouts from the Local Union, Anderson filed additional grievances against the Local Union with the National Labor Relations Board. Compl. at 3. She attached several documents to her complaint, detailing a denial of an appeal from the NLRB Regional Director's refusal to issue a complaint against the Local Union for failing to process Anderson's grievance, Anderson's charge against the Local Union for refusing to process her grievance, a letter

3

confirming receipt of a charge, and a charge claiming that the Local Union President Engelhart refused to bargain in good faith on Anderson's behalf. *Id.* at 5–17.

Unsatisfied with the outcomes of her grievances, in March 2021 Anderson filed this *pro se* lawsuit against the American Postal Workers Union, AFL-CIO, and two of its officers Craig Fisher and Sharyn Stone (collectively the National Union Defendants), and Northwest Illinois Area Local, President Jackie Engelhart, Stewards Marissa Youngbey, Yolanda Safsaf, Raymond Stripling, Craft Director Joe Golden, Central Region Coordinator Sharon Stone, and National Business Agent Craig Fisher (collectively the Local Union Defendants). *See* Compl. The complaint alleges that the poor handling of her grievances amounted to discrimination, retaliation, and created a hostile work environment in violation of 5 U.S.C. § 7116, and also violated the American Postal Worker Union Constitution and the unions' duty of fair representation in violation of Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. *Id.* at 1–3.

The Local Union Defendants and the National Union Defendants filed respective motions to dismiss the complaint. Loc. Union Defs.' Mot.; Nat'l Union Defs.' Mot. The Local Union Defendants argue that some of Anderson's claims should be dismissed for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), as well as for failure to adequately state a claim, Fed. R. Civ. P. 12(b)(6). *See* Loc. Union Defs.' Br. The National Union Defendants similarly argue that the complaint fails to adequately state a claim against them because the national officers cannot be held liable for a breach of the duty of fair representation and the National Union cannot be held

4

liable for the actions of the Local Union. R. 28, Nat'l Union Defs.' Br. These Defendants also move to dismiss the complaint in its entirety because Anderson failed to update the Court that she no longer qualifies for *in forma pauperis* status. R. 81, Nat'l Union Defs.' § 1915 Mot.

For the reasons explained in this Opinion, Anderson's complaint is dismissed with leave to amend certain claims.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79. Because Anderson is a pro se litigant, the Court must construe the complaint expansively. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). If there is an arguable basis for a claim in fact or law, then leave to proceed will be granted. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

### III. Analysis

#### A. *In forma pauperis* Status

After filing a dismissal motion on the merits, the National Union Defendants later filed a second motion to dismiss Anderson's complaint, invoking the governing statute's provision that requires dismissal of a case if an "allegation of poverty is untrue." 28 U.S.C.§ 1915(e)(2)(A). In particular, the National Union Defendants contend that Anderson failed to update the Court on her improved financial status, which rendered her ineligible for *in forma pauperis* status. *See* Nat'l Union Defs.' § 1915 Mot.[4] Plaintiffs who cannot pay the filing fee may seek to proceed *in forma pauperis*

---

[4]The National Union Defendants attached a Declaration from Alus J. Stephens to their Motion to Dismiss Under § 1915. *See* R. 81-1, Stephens Decl. The facts alleged in the declaration are not directly relevant to the present case and form no basis for this Opinion. Anderson's motion to strike the declaration, R. 95, is terminated as unnecessary.

and be excused from paying. 28 U.S.C. § 1915(a)(1).[5] To apply, the plaintiff is required to submit an affidavit that details the plaintiff's assets. 28 U.S.C. § 1915(a)(1).

The governing statute and circuit precedent do not explicitly address whether plaintiffs who are granted *in forma pauperis* status at the time of the suit's filing have a continuing duty to update the Court on their financial status. The statute provides that "the court shall dismiss the case at any time if the court determines that … the allegation of poverty is untrue." § 1915(e)(2)(A). The Seventh Circuit has held that an allegation of poverty is "untrue" when the application includes a "deliberate misrepresentation" about the applicant's financial status, rather than "simply inaccurate" information. *Robertson v. French*, 949 F.3d 347, 349, 351 (7th Cir. 2020) (cleaned up). Beyond the direction that the plaintiff must truthfully represent their financial status at the time of filing, however, neither the statute nor the case law explicitly instructs an *in forma pauperis* plaintiff of an obligation to keep the court apprised of the plaintiff's financial status.

The National Union Defendants contend that Anderson violated § 1915(e)(2)(A) when she accumulated more money but then did not update the Court. Nat'l Union Defs.' § 1915 Mot. at 2. The National Union Defendants explain that Anderson returned to employment with the U.S. Postal Service in August 2023 and has received a base wage of $73,702 annually (excluding overtime and premium pay)

---

[5]Prisoners also may seek *in forma pauperis* status, but they are never completely excused from paying the filing fee—they must pay in monthly installments. 28 U.S.C. § 1915(b)(1). In contrast, non-prisoners like Anderson may be entirely excused. *See* 28 U.S.C. § 1915(a)(1).

since she returned to work. *Id.*; R. 81-1, Fisher Decl. ¶¶ 3–5. Even more, Anderson received a backpay award of $73,956.06 as a settlement for a 2023 grievance. Nat'l Union Defs.' § 1915 Mot. at 2; Fisher Decl. ¶ 6.

The National Union Defendants are correct that Anderson's income and backpay award disqualify her—at this time—for *in forma pauperis* status. *See* R. 3. The governing statutory text does support the requirement that plaintiffs must update the court on their ability to pay the filing fee. The statute excuses "*pre*payment" of the filing fee, § 1915(a)(1) (emphasis added), that is, excusing payment up front. Implicit in that statutory term, then, is that the court may require payment later in the case. This only makes sense, because being excused from prepayment should not forever excuse a lottery-winning plaintiff—or even a plaintiff who simply prevails in the lawsuit and is awarded damages—from paying what is otherwise required of all other litigants. The statute also generally invests substantial discretion in courts, including requiring a "portion" of the filing fee. *See* § 1915(e)(2) (referring to "any portion" of a filing fee "that may have been paid"). All told, then, *in forma pauperis* plaintiffs do have an obligation to update the Court if they are later able to pay the filing fee (or even part of it).

Having said that, because it does not appear that Anderson deliberately misled the Court about her financial status, dismissal is not the right consequence. Anderson does not dispute what her current salary is or the amount that she received in the grievance payout. R. 93, Pl.'s § 1915 Resp. at 5–6. She instead insists that "non-prisoner *in forma pauperis*" applicants are not required to disclose any money received

8

or change in salary after the filing of their case, and to the extent there is such a requirement, she "was/is completely unaware of any rule." *Id.* at 6, 9. Although the Opinion now has explained that the statute does indeed require updates, Anderson also says that she has "no objection to paying the court filing fee" now. *Id.* at 9; *see* R. 3.

For their part, the National Union Defendants do not provide any evidence that Anderson deliberately concealed her change in assets or income from the Court. Instead, the National Union Defendants argue that *any* failure to update the court, even if accidental or unintentional, requires dismissal of the complaint. *See* Nat'l Union Defs.' § 1915 Mot. at 4–5. To support their position, the National Union Defendants rely on the statutory text saying that "the court shall dismiss the case at any time if the court determines that … the allegation of poverty is untrue." § 1915(e)(2)(A); Nat'l Union Defs.' § 1915 Mot. at 4 (citing *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002)). But the text of the statute and the case that they rely on do not support this sweeping view. The statute's text requires dismissal if the "allegation" of poverty is "untrue." § 1915(e(2)(A). When Anderson filed the lawsuit, she did *not* make an untrue allegation—she indeed was financially eligible for *in forma pauperis* status at the time. Yes, Anderson should have updated her financial status, but she made no untrue allegation under the statute's terms. Nor does the primary case cited by the defense require dismissal in all cases. In *Thomas v. Gen. Motors Acceptance Corp.*, the Seventh Circuit held that a plaintiff's complaint should be dismissed if the court finds that the plaintiff "*misrepresented* his

9

financial condition *in his application* to be permitted to proceed in forma pauperis." 288 F.3d at 306 (emphases added). A misrepresentation is different from an innocent inaccuracy or an unintentional failure to update financial status. The term "misrepresentation" implies an intent to mislead, which has not been shown on this record.

Other Seventh Circuit cases only go as far as the conclusion in *Thomas*. In *Childress v. Kerr*, for example, the Seventh Circuit commented (in an unpublished disposition) on the grey area of financial updates, noting that "the IFP statute does not expressly impose an ongoing duty to keep the district court apprised" of the plaintiff's improved financial status. 803 F. App'x 949, 951 (7th Cir. 2020) (non-precedential disposition). The court similarly acknowledged that "an IFP plaintiff need not report future income on an IFP application when he has no access to that money and cannot use it to pay filing fees." *Id.* (citing *Robertson*, 949 F.3d at 352). Nevertheless, the Seventh Circuit affirmed the dismissal of the case because the district court had found that the plaintiff "*purposely* failed to inform the court of his improved financial situation." *Id.* at 952 (emphasis added). Again, intentional concealment of Anderson's improved financial situation has not been shown.

In sum, although plaintiffs proceeding *in forma pauperis* have a continuing obligation to keep the court apprised of an improvement in their financial situation, dismissal is appropriate only where there is a finding that the plaintiff intentionally misled or concealed the improvement. Here, because the facts do not show that Anderson engaged in misconduct, dismissal is rejected. Instead, Anderson shall pay the $405 filing fee to the Clerk of Court on or before November 20, 2024.

### B. Local Union Defendants

Moving on to the merits of the claims, Anderson first raises allegations of discrimination, retaliation, and hostile work environment through several purported causes of action against the Local Union Defendants. In the complaint, Anderson argues that the alleged adverse treatment qualifies as unfair labor practices, 5 U.S.C. § 7116, and violates the American Postal Workers Union Constitution, in violation of Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 1985(a). Compl. at 1. She also raises general claims of discrimination not expressly tied to either cause of action. Compl. at 3 ("And these plus a lot more discriminatory and retaliatory actions by my own union has help created my workplace environment hostile and unsafe to work …."). Though the Local Union Defendants treat the general allegations as distinct from the specific statutory claims, *see* Loc. Union Defs.' Br. at 14, the *pro se* pleading does have to be considered expansively, so the Court will consider the general allegations when evaluating Anderson's statutory claims and will draw reasonable inferences in Anderson's favor. *See Haines*, 404 U.S. at 521.

### 1. Unfair Labor Practices

As a threshold matter, this Court lacks subject matter jurisdiction over Anderson's claims that the Local Union Defendants discriminated and retaliated against her in violation of federal unfair labor practices laws. 5 U.S.C. § 7116. Anderson alleges that the Local Union Defendants discriminated and retaliated against her when the union failed to pay her settlement amounts that she was allegedly owed and failed to properly handle her grievances, in purported violation of 5 U.S.C. §§ 7116(b)(2)–

11

(b)(5). *See* Compl. at 1. The Local Union Defendants correctly point out, Loc. Union Defs.' Br. at 4–5, that the Federal Labor Relations Authority has exclusive jurisdiction over charges of unfair labor practices brought under 5 U.S.C. § 7116. 5 U.S.C. §§ 7103(a)(6), 7118(a); *Karahalios v. Nat'l Fed'n of Fed. Emps., Loc. 1263*, 489 U.S. 527, 532–33 (1986). Any charges that the Local Union Defendants (or any Defendants, for that matter) committed an unfair labor practice is outside this Court's subject matter jurisdiction. So those particular claims are dismissed for lack of subject matter jurisdiction and cannot be the subject of a proposed amended complaint.

### 2. APWU Constitution

Next, Anderson alleges that the Local Union Defendants breached duties set forth in the American Postal Workers' Union Constitution. Compl. at 1. Generally speaking, Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), authorizes union workers to sue (as third-party beneficiaries) their union for violation of the union constitution. *Woodell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 100–01 (1991). The Postal Reorganization Act, 39 U.S.C. § 1208(b), extends the cause of action to postal service unions.

Anderson alleges that the Local Union Defendants breached Article 15 § 1(c) and 15 § 1(d) of the American Postal Workers Union Constitution. Compl. at 4. Article 15 § 1(c) provides that union officers and members may be disciplined for "[v]iolating the right of members to be free from discrimination on the basis of race, color, creed, sex, sexual orientation, nationality, handicap, political affiliation, age or religion." R. 25-1, Loc. Union Defs.' Br, Exh. 1 at 3. Article 15 § 1(d) further provides that union

12

officials may be disciplined for "[e]ngaging in conduct that would expose the APWU to civil liability." *Id.*

The Local Union Defendants point out that Anderson did not allege that she exhausted the administrative remedies available to her under Article 15 of the American Postal Workers Union Constitution, and thus the claim should be dismissed. Loc. Union Defs.' Br. at 6–7. Nor does Anderson assert, in her response brief, that she exhausted the internal union remedies. *See* R. 40, Pl.'s Resp. And Article 15 does provide aggrieved union members with an internal mechanism for resolving their claims. Loc. Union Defs.' Br., Exh 1 at 3, Art. 15 § 3(f). But the mere failure to exhaust internal remedies by itself is not necessarily sufficient, in all instances, to warrant dismissal. Rather, "[t]he decision whether to dismiss a section 301 suit for failure to exhaust internal union remedies is one committed to the district court's discretion." *Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 805 (7th Cir. 2008).

Here, discretion counsels in favor of dismissing the complaint for failure to exhaust. When deciding whether to dismiss a claim for failure to exhaust internal union remedies, courts may consider "(1) whether the union has manifested such hostility to the plaintiff's grievance as to render exhaustion of his internal appeal rights futile, (2) whether the internal union appeals procedures are inadequate either to reactivate the grievance or to result in complete relief to the plaintiff, and (3) whether demanding exhaustion would cause undue delay in the resolution of the plaintiff's complaint." *Bell*, 547 F.3d at 805. Anderson alleges that she filed grievances and National Labor Relations Board charges, but she does not allege (nor does she assert in her response

brief) that she tried to use the internal processes and that they were essentially unavailable to her. Compl. at 2–3; *See* Pl.'s Resp. So the circumstances weigh in favor of requiring exhaustion.

Even if Anderson had alleged that she exhausted internal union remedies, her claim against the Local Union Defendants still would fall short. First, as to the individual Local Union Defendants, Anderson does not allege any facts plausibly showing that the named Local Union officials—Engelhart, Youngbey, Safsaf, Stripling, or Golden—were motivated by a discriminatory intent and treated her adversely. *See* Compl. The complaint just makes a conclusory statement that Anderson suffered discrimination. The allegations against the Local Union itself fail for a similar reason. The complaint contains only conclusory allegations of race discrimination. *See* Compl. at 4. And Anderson's claims under Article 15 § 1(d) fail because she did not allege facts plausibly showing that the Local Union by extension "engag[ed] in conduct that would expose the APWU to civil liability." *See* Compl.; 29 U.S.C. § 185(b) (binding a union to the acts of its agents); *Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 217–18 (1979). Because she failed to state a plausible claim for discrimination against the Local Union Defendants, Anderson's claim that the Local Union Defendants violated the American Postal Workers Union Constitution is dismissed, though for now without prejudice given her *pro se* status and the absence of a prior amendment.

14

## C. Duty of Fair Representation

It appears that the only claim against both the Local Union Defendants and the National Union Defendants is for a breach of the duty of fair representation. Compl. at 1. Anderson fails to state a claim as to both parties. Section 1208(b) of the Postal Reorganization Act, 39 U.S.C. § 1208(b), authorizes Postal Service union employees to sue the labor union for breach of the duty of fair representation. When deciding breach of the duty of fair representation claim, courts apply the standards set forth in Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). *Woodell*, 502 U.S. at 96–97.

A union's duty of fair representation comes from its "role as the exclusive representative of all employees in a collective bargaining unit." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). This role bestows on unions a legal obligation to serve the interests of its members without hostility, arbitrariness, or discrimination, and also to exercise its discretion in good faith. *See id.*; *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). A union's actions are arbitrary only where "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (cleaned up). At the pleading stage, Anderson "need not prove that the union acted irrationally," but she must allege facts sufficient to hold her story together. *Taha,* 947 F.3d at 470..

15

### 1. Union Officers

Anderson fails to state plausible claims against the named union officials (both Local and National). Federal courts "have held that individual union officials are immune from suit for breach of the duty of fair representation." *Oliver v. Gallagher*, 2006 WL 517640, at *4 (N.D. Ohio Mar. 2, 2006) (collecting cases). This is consistent with Supreme Court precedent and the purpose of the Labor Management Relations Act. It has been long understood that "union agents"—union officials like those named here—are not personally liable for acts performed on the union's behalf in the collective bargaining process, and this non-liability has been extended to alleged breaches of the duty of fair representation. *See Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 247–49 (1962); *see also Morris v. Loc. 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d Cir. 1999). Anderson's claims against the named union officers are thus dismissed, and the dismissal is with prejudice because there is no way to fix the allegations.

### 2. The Unions

Moving on from the individual officers to the Unions themselves, the allegations in the complaint are too vague and conclusory to support a plausible inference that either the Local Union or the National Union violated its duty of fair representation. Anderson makes several allegations about the Local Union, accusing it of mishandling her grievances. *See* Compl. She also alleges that she has raised these issues with the National Labor Relations Board, "but the wrongdoing has continued." *Id.* at 3. What she does not allege, however, is *factual* content (instead of mere conclusions)

16

on how any mishandling of her grievances or continued wrongdoing rises to the level of hostile, arbitrary, or discriminatory actions on behalf of the Local Union. Her complaint also lacks any allegations supporting an inference that the Local Union's actions, even if negligent, violated the collective bargaining agreement. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983).

The fair-representation claims against the National Union fail for additional reasons. Anderson does not allege any facts saying that the National Union *itself* engaged in bad-faith conduct or otherwise acted arbitrarily when handling her grievances. Instead, it seems that Anderson believes the National Union is simply liable for the actions of the Local Union Defendants and that the National Union is supposedly accountable through a theory of supervisory liability. But international unions cannot be held liable for a local union affiliate's breach of the duty of fair representation unless the international union itself expressly ratifies those actions. *Carbon Fuel Co.*, 444 U.S. at 217–18. And there are no allegations that the National Union ratified the Local Union's actions, so this theory of liability fails.

Both Unions also insist that, even if Anderson were to plausibly state a fair-representation claim, the claims would be time-barred. Loc. Union Defs.' Br. at 10–11; Nat'l Union Defs.' Br. at 7–8. The defendants are correct that fair-representation claims are subject to a six-month statute of limitations. 29 U.S.C. § 160(b); *DelCostello*, 462 U.S. at 169–70. It is also true that Anderson alleges that the Union failed to process or pay her grievances on several occasions occurring well outside of the six-month window. *See* Compl. at 2; Loc. Union Defs.' Br. at 11. Even so, statute

17

of limitations defenses generally should not be litigated via motions to dismiss under Rule 12(b)(6). *See Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). Indeed, even if the complaint itself reveals a statute of limitations problem, the appropriate way to consider the argument would be through a Rule 12(c) motion for judgment on the pleadings. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)). In any event, because Anderson will be given a chance to file an amended complaint on the fair-representation claims, there is no need to decide the statute of limitations defense right now.

## IV. Conclusion

In sum, the claims for unfair labor practices against the Local Union Defendants are dismissed for lack of subject matter jurisdiction (and cannot be amended); the fair-representation claims against the individual union officials are dismissed with prejudice; and the remaining claims—that the Local Union Defendants violated the American Postal Workers Constitution and that the Union Defendants breached their duty of fair representation—are dismissed without prejudice. If Anderson genuinely believes that she can fix the identified problems, then she must file an

amended complaint on or before November 27, 2024. If no amended complaint is filed by the deadline, then a final judgment will be entered.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 8, 2024